**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| KELLY S. BREWER, | ) | CASE NO. 5:19-CV-01854 |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| ANDREW SAUL, | ) | |
| *Comm'r of Soc. Sec.*, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

Plaintiff, Kelly S. Brewer ("Plaintiff"), challenges the final decision of Defendant

Andrew Saul, Commissioner of Social Security ("Commissioner"), denying her application for a

Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the

Social Security Act, 42 U.S.C. §§ 416(i), 423, *et seq.* ("Act"). This court has jurisdiction

pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate

Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and

Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the

Commissioner's final decision be AFFIRMED.

### I. Procedural History

On April 15, 2013, Plaintiff filed her applications for POD and DIB, alleging a disability

onset date of January 1, 2005. (R. 15, Transcript ("Tr.") 126-129). The application was denied

initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative

Law Judge ("ALJ"). (Tr. 72-110). Plaintiff participated in the hearing on January 12, 2015, was

not represented by counsel, and testified. (Tr. 37-71). On March 17, 2015, the ALJ found

Plaintiff not disabled. (Tr. 32). On December 21, 2015, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-7).

Plaintiff then sought review in federal court in Case No. 5:16-cv-00137. On December 12, 2016, a Magistrate Judge issued a Report and Recommendation to remand the case, which the district court adopted on January 3, 2017, after Defendant did not file objections.

On June 12, 2017, the Appeals Council issued an order remanding the case to an ALJ for further proceedings consistent with the order of the court. (Tr. 554).

On November 3, 2017, Plaintiff participated in a new hearing, was represented by counsel, and testified. (Tr. 419-490). A vocational expert ("VE") and a medical expert ("ME") also testified. *Id*. On January 11, 2018, the ALJ found Plaintiff not disabled. (Tr. 411). On July 11, 2019, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 384-392).

Plaintiff filed a complaint challenging the Commissioner's final decision, on August 14, 2019. (R. 1). The parties have completed briefing in this case. (R. 16, 17 & 19). Plaintiff asserts the following assignments of error: (1) the ALJ did not comply with the court's remand order by failing to ascribe great weight to the ME's testimony; and (2) had the ALJ properly credited the ME's testimony, a finding that Plaintiff met Listing 12.13 was warranted. (R. 16).

## II. Evidence

### A. Relevant Medical Evidence Addressed in the Prior Report and Recommendation

The court previously set forth the relevant medical evidence as follows:

#### 1. Relevant Medical Records

Plaintiff's medical conditions include post-traumatic stress disorder, bipolar

disorder, anorexia, bulimia, lupus, scleroderma, anxiety, and depression. (Tr. 72) Plaintiff treated with Dr. Steven Richman from August 4, 2005 to June 18, 2006. (Tr. 211-222) Plaintiff's weight fluctuated between 105 and 110 pounds during that time period. (Tr. 211-222) In August 2005, plaintiff went to the doctor complaining of nausea and vomiting. (Tr. 218) She also reported having a hypoglycemic seizure. (Tr. 218) In September 2005, she told Dr. Richman she was an "emotional wreck." (Tr. 216)

In November 2005, plaintiff complained of fatigue and multiple stressors. (Tr. 213) Dr. Richman wrote her prescriptions to "[d]o something on purpose to treat yourself well every day," and "1) [e]very evening write down 3 things going well and 2) exercise." (Tr. 212)

In December 2005, plaintiff continued to complain of fatigue and other symptoms. (Tr. 211) Dr. Richman's notes indicate that plaintiff presented as tearful and anxious during treatment appointments, but that Lexapro was helping with her mental symptoms. (Tr. 211) His treatment notes also document normal findings in plaintiff's respiratory and cardiovascular systems. (Tr. 211)

In early February 2006, plaintiff complained of insomnia and dealing with public places. (Tr. 222) In late February 2006, she complained of insomnia and depression. (Tr. 221)

In April 2006, plaintiff presented to Anil M. Parikh, M.D., with symptoms of depression, anxiety and an eating disorder. (Tr. 235) Plaintiff reported taking Lexapro for her symptoms. (Tr. 235) She also reported that she had thoughts of suicide in November 2005 when she had stopped taking Lexapro and "went into a deeper depression." (Tr. 235) On mental status examination, Dr. Parikh noted that plaintiff's mood was depressed and anxious but her cognition was intact and her insight and judgment were fair. (Tr. 236) He diagnosed major depressive disorder, anorexia nervosa and panic disorder and assigned a GAF score of 55, with a high of 65 within the past year. (Tr. 236)

Plaintiff started attending psychotherapy sessions with Kristine Jordan, LISW, in April 2006. (Tr. 233) At her first session, plaintiff discussed her relationship with her mother and her anxiety about going to a family function for Easter where she would encounter the cousin who molested her as a child. (Tr. 233) She also reported that she was involved with a prison ministry and felt "very compelled by it." (Tr. 233) On April 28, 2006, plaintiff reported that her husband had cheated on her last Fall and she believed that his infidelity "encouraged" her eating disorder. (Tr. 233)

On May 4, 2006, plaintiff continued to struggle with family stressors but felt that the medication and treatment were helping. (Tr. 233) She also continued to struggle with her eating disorder but had not lost any more weight. (Tr. 233) Later

in May 2006, plaintiff reported that she felt her husband was more devoted and committed to her. (Tr. 232)

In June 2006, the therapist noted that plaintiff was continuing to have difficulty with lack of energy and motivation. (Tr. 234) However, she also noted that plaintiff was maintaining her weight at around 106 pounds and her target weight was 110. (Tr. 234)

In August 2006, the therapist reviewed counseling techniques to identify and manage anger and control issues. (Tr. 231) Notes from August 4, 2006 state that plaintiff was continuing to do well on medication. (Tr. 231) At the end of August, plaintiff had gained two pounds and reported that she was starting to sell products for Avon, which she was excited about. (Tr. 231)

In September 2006, plaintiff experienced some regression of her symptoms which was mostly attributed to the fact that her mother was staying with her for a week, but she was doing well with the goals she set for herself. (Tr. 231) Plaintiff expressed concerns regarding gaining and losing weight throughout her psychotherapy in 2006. (Tr. 233-234)

In March 2007, plaintiff reported that she was doing well. (Tr. 230) She had gained six pounds and was planning on attending a women's retreat that Friday. (Tr. 230) She also reported that she was continuing to babysit for extra money. (Tr. 230) Plaintiff reported that her involvement with church and a small women's group continued to be supportive. (Tr. 230)

In April 2007, plaintiff felt a significant increase in depression and she was not eating. (Tr. 230) The regression was attributed to her mother writing a letter to the cousin that molested plaintiff, which made plaintiff feel betrayed, hurt and angry. (Tr. 230)

In May 2007, plaintiff was continuing to do "fair" on the medication. (Tr. 230) She felt better on an increased dose of Lexapro. (Tr. 230) She was becoming easily agitated at times, but was doing fair in regards to eating. (Tr. 230) Plaintiff weighed 120 pounds, the most she ever weighed while treating with Ms. Jordan. (Tr. 229)

In June 2007, plaintiff reported that she had gotten into a fight with her husband. (Tr. 229) Plaintiff reported that she had only felt safe in her closet. (Tr. 229) She admitted that she had not taken her medication that day. (Tr. 229) She reported that she was doing better with her anorexia. She had maintained a healthy weight, was gaining weight, and felt comfortable with this. (Tr. 229)

Also in June 2007, plaintiff reported to Dr. Richman that for the last year she had been experiencing weakness, tiredness, significant lethargy including having a

difficult time getting out of bed and tingling in her legs. (Tr. 219)

In July 2007, plaintiff reported that she was doing fair and was renewing relationships with family members. (Tr. 228) She weighed 132 pounds, which was her goal weight. (Tr. 228)

Ms. Brewer continued to have significant mental health issues following the date last insured over the years 2007-2009. She was diagnosed with bipolar, manic thoughts, intense anxiety and fearfulness. (Tr. 222-230, 238-243)

In 2010, during a therapy session with Dr. A.C. Ciancone, plaintiff reported an attempt to kill herself five years earlier. (Tr. 250) In 2010-2012, she was diagnosed with PTSD, bipolar, panic attacks, agoraphobia, and borderline personality disorder. (Tr. 244-249)

Mental health treatment continued for long term PTSD, depression, anxiety and mood swings from 2010 to early 2013. Her issues with weight, outbursts of anger, mood swings, and difficulties in processing stress continued. (Tr. 317-347) In June 2012, she reported constant, worsening pain and stated that her "bones hurt all the time." (Tr. 297)

In 2012, she reported to Dr. May Zem that she had been having trouble with pain for many years and that her pain had been worsening over the past ten years. (Tr. 264)

Progress notes from January 2013 indicate that plaintiff had seen a rheumatologist and had been diagnosed with lupus and scleroderma. (Tr. 295) In June 2013, plaintiff reported speech and memory recall issues. (Tr. 368)

**[2]. Opinion Evidence**

### [a]. Kristine Jordan – May 2013

Plaintiff's treating therapist, Kristine Jordan, LISW, completed a medical source assessment of plaintiff's mental abilities in May 2013. (Tr. 382-383) Ms. Jordan opined that plaintiff would be unable to remember short and simple instructions, detailed instructions, locations, and work-like procedures on any sustained or regular basis. (Tr. 382) She would further be unable to maintain attention for extended periods of time, complete a normal workday, travel to unfamiliar places, and would be unable to set realistic goals. (Tr. 383) She opined that plaintiff's mental limitations would cause noticeable difficulty in her ability to interact socially and her ability to adapt to changes in a work setting. (Tr. 383) Ms. Jordan assessed that plaintiff's impairments would cause her to miss more than four days of work per month. (Tr. 383)

### [b]. William Kedia, M.D. – July 2013

On July 2, 2013, Dr. A. William Kedia completed two questionnaires assessing the limiting effects of scleroderma and lupus. (Tr. 373-376) Dr. Kedia opined that the diagnosis of scleroderma and lupus would preclude any work related physical activity and would result in the "complete incapacitation of a patient's life activities." (Tr. 374) He also opined that these diseases would manifest in the symptoms of "fatigue, anxiety, depression, insomnia, memory issues…" amongst other symptoms. (Tr. 373) Dr. Kedia opined that plaintiff could lift less than five pounds, stand/walk for 30 minutes at a time, for two hours total; sit one hour at a time, for two hours total; could not engage in postural activities; would be off task at least 25% of the time; and would miss more than four days of work per month. (Tr. 373-376)

### [c]. Reviewing Physicians/Psychiatrists

William Bolz, M.D. was asked to review plaintiff's medical records on behalf of the agency in July 2013. Dr. Bolz stated that there was insufficient evidence to fully assess plaintiff's claim. (Tr. 76, 78-79)

Also in July 2013, Kristen Haskins, Psy.D., a state psychological consultant, reviewed plaintiff's records related to her mental impairments. (Tr. 77) Dr. Haskins also indicated that there was insufficient evidence during the period from the alleged onset date to the last insured date. (Tr. 77)

Similarly, Teresita Cruz, M.D., was unable to provide a medical opinion regarding plaintiff's impairments in September 2013 due to insufficient evidence. (Tr. 87) She reported that there was insufficient evidence to fully assess the claim. (Tr. 87)

## B. New Relevant Medical Evidence[1]

Since the court's previous remand, the following relevant evidence has been added to the record.

---

[1]  The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties in their briefs and also deemed relevant by the court to the assignments of error raised.

1.  **Treatment Records**

The parties' briefs do not cite any new treatment records.

2.  **Hearing Testimony of the ME**

At the hearing on November 3, 2017, Robert Bookchin, M.D., testified as the ME and indicated that he had reviewed the medical evidence provided but had not personally examined the claimant. (Tr. 474). The ALJ inquired whether there was "sufficient objective medical, and other evidence, that allows you to form opinions about the nature and severity of claimant's impairments *during the relevant time period*?" (Tr. 474-475) (emphasis added). Dr. Bookchin testified "Yes, I think so." (Tr. 475). However, when the ALJ asked Dr. Bookchin whether he understood what the relevant time period in the case was, Dr. Bookchin asked for a reminder. *Id*. The ALJ explained that the relevant time period was January 1, 2005 to March 31, 2007. *Id*. Dr. Bookchin inquired whether Plaintiff's present state of health was at issue, and when told to concentrate on the relevant time period, Dr. Bookchin stated he understood "but it's rather difficult." (Tr. 475).

Dr. Bookchin suggested that perhaps he could offer "a summary of what my impressions are, and then [the ALJ] can question [him] about the relevance for that period. (Tr. 476). With respect to Plaintiff's mental impairments, Dr. Bookchin testified as follows:

> However, her longstanding and complex mental disorders, which they include anorexia nervosa, depression, and somatic symptoms, these all dating back into the period that you were asking about. It documents it in 4F, and recently in 27F. It relates to the listing 12.07, the anorexia nervosa, or also 12.13 - - I'm sorry. 12.13 is an eating disorder with persistence, a persistent eating disorder, which she may qualify for. I do not have sufficient psychiatric expertise to make a clear decision on this because her symptoms are very complex, and sort of go in between several possible diagnoses. The somatization was something that I would definitely consider. That's why I mentioned 21.07(a)(2) or (3), and (b)(2). I think that is the most direct listing that may confine to her, I don't find a physical listing. You don't have the scleroderma and lupus just go away. I think carrying a

7

positive antinuclear antibody without having those facilities, it happens in a certain percentage of people. And if she has severe mental disorder such as that, with her somatization, that could explain her symptomatology.

(Tr. 477-478). After this testimony, the following exchange occurred:

[ALJ]: Okay. And, specifically, I think, I think as I understand what you just told me in regards to 12.07 and 12.13, you've indicated that you don't have the qualifications to comment on whether nor not she would meet or equal those listings. Is that correct?

[ME]: Well, by my impression, she does. But I am not a psychiatrist. I'm an Internal Medicine expert, which includes being able to judge fair amounts of psychiatric abnormalities. And my best assessment is that she has many of the symptoms and signs of somatization, which is 12.07

[ALJ]: Okay. But are you saying that then that she would meet or equal one of those listings, or are you just saying that she may meet the diagnosis for those conditions?

[ME]: I think she may meet or equal a listing 12.07A. Let me just pull that up and, and go into some detail in that. Somatic symptoms related disorder. She has one or more somatic symptoms that are distressing with depressive thoughts, feelings, or behavior related to her symptoms. That's 12.07A(2), and B, marked limitation of her ability marked limitation of her ability to interact with others, and to (3) maintain pace, and even (4) adapt or manage herself. I think in that sense, in my opinion, she would either meet or equal that listing.

(Tr. 478-479). The ALJ proceeded to point out to Dr. Bookchin that during the relevant time frame, Plaintiff was "going to a women's retreat on Friday. She had an involvement in a church with a small women's group. She was babysitting for extra money, and she was happy that she finally caught up on her bills." (Tr. 480). Dr. Bookchin confessed to being "confused about the timing," stating that "I didn't know at first that we were limited to that time, so I sort of added it all together." *Id*. When the ALJ stated that he was not trying to debate the ME but was struggling to understand his opinion, Dr. Bookchin stated: "Yeah. I'm not clear on that either, Your Honor." (Tr. 480).

The ME further testified that Plaintiff definitely had an eating disorder, which Plaintiff

stated went back to childhood, and it had been persistent. (Tr. 481-482). The ME further indicated that he believes the disorder "resulted in, I think … significant impairments of her physical and psychological health. And under Part D, it did affect, seriously affect her ability to concentrate and maintain pace, and to adapt and manage herself. I believe it applies to that earlier period." (Tr. 482).

With respect to Listings 14.02 and 14.04, the ME clearly testified that he did not believe it was met or equaled because "there was never a clearly established diagnosis of either lupus or scleroderma." (Tr. 481).

### 3. Medical Opinions Concerning Plaintiff's Functional Limitations

After the hearing, on November 16, 2017, John Davis, Ph.D., a clinical psychologist, completed a medical source statement concerning Plaintiff's ability to perform work-related activities prior to March 31, 2007. (Tr. 878-880). Dr. Davis opined that Plaintiff had moderate limitations understanding, remembering, and carrying out complex instruction, along with making complex work-related decisions. (Tr. 878). He further indicated Plaintiff had only mild limitations in her ability to interact with the public, supervisors, and co-workers. (Tr. 879).

In response to medical interrogatories pertaining to the period between January 1, 2005 through March 31, 2007, Dr. Davis opined that "yes," there was "sufficient objective medical and other evidence" to allow him to form opinions about the nature and severity of the claimant's impairment(s) during the relevant time period." (Tr. 881). Dr. Davis made the following observations: "Although there are 29 Exh[ibits] in this case & various diagnoses are offered …, there is very little in the way of MERS to support these diagnosis [sic] — *e.g.* Inpatient…treatment, long term out patient treatment etc. In fact most mental health issues are self reported & even the diagnoses are self reported." (Tr. 881-882). Dr. Davis also observed that

Dr. Kedia was not a mental health specialist and thus not an authoritative source. (Tr. 882). Dr. Davis found that Plaintiff's condition did not meet or equal listings 12.04, 12.06, and 12.15. *Id.* He indicated Plaintiff had moderate limitations interacting with others and in concentration, persistence, and pace. (Tr. 883). He further opined the evidence did not establish the presence of "C" criteria. (Tr. 886).

On December 1, 2017, Plaintiff underwent a psychological consultative examination performed by April M. Sobieralski, Psy.D. (Tr. 888-895). Along with a clinical interview, Dr. Sobieralski reviewed Plaintiff's medical records from the time period of 2015 through 2017. (Tr. 888-889). Based on her examination, Dr. Sobieralski offered the following diagnoses: post-traumatic stress disorder (PTSD) with dissociate symptoms; major depressive disorder that was recurrent and moderate; anorexia nervosa, restricting type; and, borderline personality disorder. (Tr. 894). Dr. Sobieralski observed that "[Plaintiff] described low energy, low motivation, and loss of interest which could impact her persistence as well." (Tr. 894-895). She also opined that "[i]t appears any type of undue stress exacerbates Ms. Brewer's mental health symptoms." (Tr. 895). Nowhere in the opinion does Dr. Sobieralski indicate that her opinions apply to the relevant time period during 2005 through 2007. (Tr. 888-895).

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§

404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent her from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent her from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1.  The claimant last met the insured status requirements of the Social Security Act on March 31, 2007.

2.  The claimant did not engage in substantial gainful activity during the period from her alleged onset date of January 1, 2005 through her date last

insured of March 31, 2007 (20 CFR 404.1571 *et seq.*).

3.  Through the date last insured, the claimant had the following severe impairments: anorexia nervosa, major depressive disorder, bipolar disorder, anxiety disorder, posttraumatic stress disorder, borderline personality disorder, and obsessive compulsive traits (20 CFR 404.1520(c)).

4.  Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.  After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she could never climb ladders, ropes, or scaffolds but occasionally climb ramps or stairs. She could frequently stoop, kneel, and crouch with occasionally crawling. She could have occasional exposure to extreme cold. The claimant could have frequent exposure to pulmonary irritants, such as fumes, dust, gases, odors, and poor ventilation. She had to avoid the use of moving machinery, commercial driving, and unprotected heights. She could perform unskilled (SVP 1-2) work. The work environment had to be free of fast-paced production requirements and involve only routine workplace changes. She could have occasional contact with the public and she could do tasks with occasional interaction with co-workers. The claimant could have superficial interaction with others, in that she could do no tasks involving arbitration, negotiation, confrontation, directing the work of others, persuading others, or being responsible for the safety or welfare of others.

6.  The claimant has no past relevant work (20 CFR 404.1565).

7.  The claimant was born on *** 1978 and was 28 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.  Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that

existed in significant numbers in the national economy that the claimant could have performed (20 C.F.R. 404.1569 and 404.1569(a)).

11.    The claimant was not under a disability, as defined in the Social Security Act, at any time from January 1, 2005, the alleged onset date, through March 31, 2007, the date last insured (20 CFR 404.1520(g)).

(Tr. 400-411).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B.  Plaintiff's Assignments of Error**

Plaintiff's filings, as set forth above, present two overall assignments of error—(1) the ALJ did not comply with the court's remand order by failing to ascribe great weight to the ME's testimony; and (2) had the ALJ properly credited the ME's testimony, a finding that Plaintiff met Listing 12.13 was warranted—but they also include multiple underlying issues that the court will consider in turn. For the sake of clarity, the court addresses them as divided below.

**1. Non-Compliance With the Court's Prior Order**

Throughout Plaintiff's brief on the merits and her reply brief there are allegations that the ALJ failed to comply with the Court's previous remand order. (R. 16, PageID# 957, 972; R. 19, PageID# 1003-1006).

**a. Duty to Develop the Record**

The Court's prior report and recommendation found that "the ALJ did not fairly and fully develop the administrative record" in light of the fact that Plaintiff "was unrepresented at the hearing and suffers from diagnosed psychological conditions." (Case No. 5:16cv137, R. 19, PageID# 532). Plaintiff's brief, however, does not argue that the ALJ again failed to develop the record. (*See generally* R. 16). Moreover, Plaintiff was represented by counsel at the new hearing. (Tr. 419). As noted in the prior report and recommendation, when a claimant is unrepresented, "a failure to fully develop the factual record is often found in cases where the ALJ conducted only superficial or perfunctory questioning, as well as in cases where the ALJ failed to obtain all available medical records and documentation." (Case No. 5:16cv137, R. 19, PageID# 531), *citing Vaca v. Comm'r of Soc. Sec.*, No. 1:08-cv-653, 2010 U.S. Dist. LEXIS 19515, at *6 (W.D. Mich. Mar. 4, 2010)). Though the issue appears moot, it was counsel's obligation to ensure that all relevant medical records were submitted, and to elicit all relevant testimony through

14

questioning.[2]

### b. Obtaining the Testimony of a Medical Expert

With respect to Plaintiff's mental impairments, specifically Listings 12.04 and 12.06, the Court's prior report and recommendation recommended "the case be remanded so the ALJ can properly make an equivalency determination after consulting with a Commissioner-appointed medical expert or experts." (Case No. 5:16cv137, R. 19, PageID# 542).

It cannot reasonably be argued that the ALJ failed to comply with this mandate. After remand, the ALJ solicited the hearing testimony of an ME as recounted above in the "Evidence" section of this report and recommendation. In addition, after the hearing, the ALJ also obtained the opinion of Dr. Davis, a clinical psychologist, and a psychological consultative examination from Dr. Sobieralski.

Despite the ALJ's clear compliance with this Court's remand order, Plaintiff asserts that by ascribing only some weight to the opinion of the ME, the ALJ "did not comply [with] this Court's order." (R. 16, PageID# 973). To the extent Plaintiff takes issue with the explanation the ALJ gave for weight ascribed to the various medical opinions and the ALJ's decision to favor one opinion over another, those arguments are addressed below. However, this Court's prior decision cannot be construed as mandating that the ALJ ascribe any specific weight to the opinion of the ME who was called to testify. Indeed, such an order would be an overreach of this

---

[2] Plaintiff's brief does take issue with the opinion of Dr. Davis on the grounds that his conclusion was based on medical records that existed at the prior hearing, which Plaintiff states this Court found insufficient. (R. 16, PageID# 970). This Court, however, did not find the record itself insufficient as Plaintiff suggests, but rather that the ALJ failed in his duty to develop the record, specifically in not seeking expert opinions such as that provided by Dr. Davis following remand. If there were no additional medical records from the relevant time period—and Plaintiff has not argued that there are—no additional amount of diligence can summon them into existence.

Court's authority. It is the ALJ's duty to weigh the evidence and opinions of record, and "[t]he ALJ is not bound to accept the opinion or theory of any medical expert, but may weigh the evidence and draw his own inferences." *Simpson v. Comm'r of Soc. Sec.*, 344 Fed. App'x 181, 194 (6th Cir. 2009) (*quoting McCain v. Dir., OWCP*, 58 Fed. App'x 184, 193 (6th Cir. 2003).

Therefore, the court finds no merit to Plaintiff's contention that the ALJ violated the remand instructions in the prior report and recommendation.

### 2. Weight Assigned to ME and Dr. Sobieralski

Plaintiff also contends that the ALJ erred by ascribing only "some weight" to the opinion of Dr. Bookchin, the ME, especially the portion of his opinion that stated Plaintiff met or equaled Listings 12.07 and 12.13.3 (R. 14, PageID# 972-977). Further, Plaintiff takes issue with the ALJ ascribing "little weight" to the opinion of consultative psychological examiner Dr. Sobieralski. *Id*. The Commissioner contends that the ALJ's decision included an extensive discussion of the Listings, and that the ALJ gave well-reasoned explanations for the weight assigned to the various medical opinions of record. (R. 17).

First, it bears noting that whether a claimant meets or equals a listing is an issue reserved to the Commissioner:

(2)  Other opinions on issues reserved to the Commissioner. We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s). Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or

---

[3]  Before the Commissioner may conclude that a claimant is disabled at Step Three of the sequential evaluation process, a claimant's impairment(s) must meet every element of a Listing. *See* 20 C.F.R. §§ 404.1520, 916.920; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986). Further, the burden is on the claimant to prove all the elements of a listing are satisfied. *King v. Sec'y of Health & Human Servs.*, 742 F.2d 968, 974 (6th Cir. 1984). Moreover, "[t]he burden of providing a ... record ... complete and detailed enough to enable the Secretary to make a disability determination rests with the claimant." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986).

> equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to this subpart, your residual functional capacity (see §§ 404.1545 and 404.1546), or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner.

20 C.F.R. § 404.1527(d)(2). The Commissioner "will not give any special significance to the source of an opinion on issues reserved to the Commissioner described in paragraphs (d)(1) and (d)(2) of this section." 20 C.F.R. § 404.1527(d)(3); *see also Henley v. Comm'r of Soc. Sec.*, No. 1:14-cv-01204, 2017 U.S. Dist. LEXIS 105675, at *11 (W.D. Tenn. July 10, 2017) ("The responsibility for deciding issues such as whether the claimant's impairments meet or equal a listed impairment, the assessment of the claimant's residual functional capacity, and the application of vocational factors rests with the Commissioner.") The same rules apply to federal or state medical or psychological consultants. 20 C.F.R. § 404.1513a(b)(2) ("Administrative law judges may also ask for medical evidence from expert medical sources. Administrative law judges will consider this evidence under §§ 404.1520b, 404.1520c, and 404.1527, as appropriate.")

Plaintiff's brief cites little authority regarding the weight accorded to non-treating sources, such as the ME, Dr. Davis, or Dr. Sobieralski, other than to observe the statement that "[g]enerally, [the Social Security Administration] give[s] more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." *See* 20 C.F.R. §§ 404.1527(c)(1). In addition, Social Security Ruling ("SSR") 96-8p, 1996 SSR LEXIS 5 , 1996 WL 374184 (July 2, 1996), cautions that an ALJ "must always consider and address medical source opinions [and] [i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *See also Puckett v. Colvin*, 2014 U.S. Dist. LEXIS 55079, 2014 WL 1584166 at * 9 (N.D. Ohio, April 21, 2014)

(Vecchiarelli, M.J.) (explaining that, although the ALJ was not required to evaluate opinions of consultative examiners with the same standard of deference as would apply to an opinion of a treating source, he was required to "acknowledge that [the examiners'] opinions contradicted his RFC finding and explain why he did not include their limitations in his determination of Plaintiff's RFC"). However, the requirement that an ALJ explain the weight afforded to a non-treating source's opinion should not be construed as rigorously as the treating physician rule. *See, e.g., Jefferson v. Colvin*, No. 1:14cv01851, 2015 U.S. Dist. LEXIS 94716, 2015 WL 4459928 at *6 (N.D. Ohio 2015) (White, M.J.) (citations omitted); *Chandler v. Comm'r of Soc. Sec.*, No. 2:13cv324, 2014 U.S. Dist. LEXIS 90128, 2014 WL 2988433 (S.D. Ohio, July 1, 2014) ("the ALJ is not required to give 'good reasons' for rejecting a nontreating source's opinions in the same way as must be done for a treating source").

The ALJ addressed the opinions of Dr. Davis and Dr. Bookchin, the ME, as follows:

> I give great weight to Dr. Davis' opinion. He was a mental health expert and he had the opportunity to review all relevant records. Additionally, the treatment notes during the relevant period showed that while the claimant had ongoing mental symptoms, she stabilized to a large degree with treatment. Moreover, there was little indication of substantial cognitive or thought disorders during the relevant period. Overall, such facts support Dr. Davis' opinion.
>
> At the hearing, the medical expert, Dr. Bookchin, opined that the claimant's conditions met or equaled listings 12.07 and 12.13. However, he admitted that he was not a psychiatric specialist. Additionally, Dr. Bookchin said that he was confused regarding the timing of the date last insured and he had apparently considered evidence outside of the relevant period.
>
> In terms of the claimant's physical conditions, Dr. Bookchin addressed the claimant's lupus and scleroderma diagnoses. Dr. Bookchin testified that the claimant's condition did not meet or equal listings 14.02 and 14.04. Indeed, Dr. Bookchin said that it was unclear why the claimant's physicians offered such diagnoses because there was insufficient objective evidence to support such diagnoses.
>
> I give some weight to Dr. Bookchin's opinion. His testimony regarding the

claimant's physical conditions was within his area of expertise as an internal medicine physician. Although the claimant had some complaints of fatigue, she had relatively few physical complaints or objective abnormalities during the relevant period. Moreover, the claimant was not diagnosed with scleroderma or lupus until several years after the date last insured, with little indication of substantial symptoms relating back to the relevant period. Conversely, Dr. Bookchin's assessment that the claimant's condition met mental listings was outside of his area of expertise. Moreover, Dr. Bookchin admitted that he was confused about the relevant period and he had considered evidence past the date last insured. Additionally, the treatment notes from the relevant period showed that while the claimant had continued mental health symptoms, she had intact orientation and no suicidal ideation. There was little evidence supporting the degree of dysfunction that would satisfy the listing criteria.

(Tr. 409).

While Plaintiff clearly believes the opinions of the ME concerning Listings 12.07 and 12.13 should have been adopted, the ALJ need "not give any special significance" to an opinion "on issues reserved to the Commissioner," including whether a listing has been satisfied. *See* 20 C.F.R. § 404.1527(d)(1)-(3) & 20 C.F.R. § 404.1513a(b)(2). Furthermore, the ALJ plainly did not ignore the ME's testimony, but sufficiently explained why he was giving greater weight to the opinion of Dr. Davis, who unlike the ME, was a mental health specialist. In addition, the interrogatories completed by Dr. Davis clearly indicated that his opinions were limited to the relevant time frame between 2005 and early 2007. (Tr. 881). As accurately noted by the ALJ, the ME was confused that he was only supposed to consider a limited time period, acknowledged that it was difficult to narrow his opinion, and admitted he was not a mental health specialist. (Tr. 475-481). Finally, the ME, like Dr. Davis, constituted a non-treating and non-examining source. Therefore, the ALJ more than adequately explained why he favored one opinion over the other. Plaintiff's attempts to positively portray the ME's opinion in contrast to Dr. Davis's opinion does not provide a basis for a remand.

With respect to the opinion of examining psychologist Dr. Sobieralski, the ALJ found as

19

follows:

> Following the hearing, the claimant had a psychological consultative exam with
> April Sobieralski, Psy.D., during which the claimant displayed anger, anxiety,
> tearfulness, and restlessness (31F). Dr. Sobieralski stated that the claimant's
> symptoms could affect her persistence, she appeared frustrated, and stress would
> exacerbate her symptoms (31F/7, 8). I grant little weight to such opinion. It was a
> one-time assessment based on an examination of the claimant over ten years after
> the date last insured. Thus, the exam findings and opinion were of little value in
> determining the claimant's functioning during the relevant period.

(Tr. 409).

To the extent Dr. Sobieralski's opinion is inconsistent with Dr. Davis's opinion, the ALJ

could not possibly have credited them both. It is not surprising that other courts have determined

that "the regulation requiring an ALJ to provide 'good reasons' for the weight given a treating

physician's opinion does not apply to an ALJ's failure to explain his favoring of one non-treating

source's opinion over another." *Williams v. Colvin*, 2015 U.S. Dist. LEXIS 117105, 2015 WL

5165458 at *5 (N.D. Ohio, Sept. 2, 2015) (citing *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.

App'x 496 (6th Cir. 2006); *accord Chandler v. Comm'r of Soc. Sec.*, 2014 U.S. Dist. LEXIS

90128, 2014 WL 2988433 at *8 (S.D. Ohio, July 1, 2014) ("the ALJ is not required to give 'good

reasons' for rejecting a nontreating source's opinions in the same way as must be done for a

treating source"); *Wright v. Colvin*, 2016 U.S. Dist. LEXIS 135777, 2016 WL 5661595 at *10

(N.D. Ohio Sept. 30, 2016) (McHargh, M.J.) (declining to "judicially expand the treating

physician rule to non-treating sources").

Here, the ALJ did not ignore Dr. Sobieralski's opinion, but noted, not unreasonably, that

the post-hearing examination of Plaintiff, performed over ten years after Plaintiff's date last

insured, provided little value in determining Plaintiff's mental functioning during the relevant

period between 2005 and 2007. (Tr. 409). Indeed, unlike Dr. Davis's opinion, there is no

indication that Dr. Sobieralski's opinion was confined to Plaintiff's status during the relevant

time frame. (Tr. 888-895). Rather, Dr. Sobieralski assessment confirmed that the evidence she

reviewed was limited to information from 2015 through 2017, all evidence that post-dated

Plaintiff's date last insured by approximately eight to ten years. (Tr. 888-889).

      Although the "the opinions of nontreating sources are generally accorded more weight than

nonexamining sources, it is not a *per se* error of law ... for the ALJ to credit a nonexamining

source over a nontreating source." *Norris v. Comm'r of Soc. Sec.*, 461 Fed. App'x 433, 439 (6th

Cir. 2012) ("While perhaps the ALJ could have provided greater detail, particularly as to why the

nonexamining opinions were more consistent with the overall record, the ALJ was under no

special obligation to do so insofar as he was weighing the respective opinions of nontreating

versus nonexamining sources.") The decision sufficiently explains the weight assigned to the

opinion of a non-treating source, Dr. Davis, and the ALJ's decision to ascribe more weight to Dr.

Davis than examining source Dr. Sobieralski does not constitute legal error. To the extent

Plaintiff "may disagree with the ALJ's explanation or her interpretation of the evidence of

record, her disagreement with the ALJ's rationale does not provide a basis for remand." *Steed v.

Colvin*, No. 4:15cv01269, 2016 U.S. Dist. LEXIS 114027, 2016 WL 4479485, at *10 (N.D. Ohio

Aug. 25, 2016) (McHargh, M.J.)

      In her reply, Plaintiff asserts that she is not challenging the explanation provided by the

ALJ, but "that the ALJ simply applied the wrong analysis by applying the wrong weight to the

evidence." (R. 19, PageID# 1002). Such an argument is not cognizable, as it essentially asks the

court to override the ALJ's weighing of the three medical opinions from the hearing and beyond,

based on Plaintiff's own interpretation of the reliability of the opinions in question. This is

tantamount to an invitation for this Court to reweigh the evidence and to assign greater weight to

the ME's opinion—rather than an argument that the ALJ failed to adequately explain why he favored one non-treating medical opinion over other non-treating medical opinions. The court's role in considering a social security appeal, however, does not include reviewing the evidence *de novo*, making credibility determinations, or reweighing the evidence. *Brainard*, 889 F.2d at 681; *see also Stief v. Comm'r of Soc. Sec.*, No. 16-11923, 2017 U.S. Dist. LEXIS 147362, 2017 WL 4973225, at *11 (E.D. Mich. May 23, 2017) ("Arguments which in actuality require 're-weigh[ing] record evidence' beseech district courts to perform a forbidden ritual."), *report and recommendation adopted*, 2017 U.S. Dist. LEXIS 146332, 2017 WL 3976617 (E.D. Mich. Sept. 11, 2017).

Thus, Plaintiff's arguments lack merit and do not provide a basis for remand.

### VI. Conclusion

For the foregoing reasons, it is recommended that the Commissioner's final decision be AFFIRMED.

s/ *David A. Ruiz*

David A. Ruiz
United States Magistrate Judge

Date: October 15, 2020

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the district court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**