PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KELLY S. BREWER, | ) | |
| | ) | CASE NO. 5:19CV1854 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | Resolving ECF No. 21 |

An Administrative Law Judge ("ALJ") denied Plaintiff Kelly S. Brewer's application for Disability Insurance Benefits after a hearing. That decision became the final determination of the Commissioner of Social Security when the Appeals Council also concluded that Plaintiff was not entitled to benefits, affirming the ALJ's decision.

The claimant sought judicial review of the Commissioner's decision, and the case was automatically referred to the assigned magistrate judge for preparation of a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.2(b)(1). On October 15, 2020, the magistrate judge submitted a Report (ECF No. 20) recommending that the Court affirm the Commissioner's decision. Plaintiff filed an Objection to the Report and Recommendation (ECF No. 21), and the Commissioner replied (ECF No. 22). As explained below, Plaintiff's Objection is well-taken. The Court remands this matter to the agency for proceedings consistent with this opinion.

(5:19CV1854)

## I. Background

The Report and Recommendation, incorporating portions of another magistrate judge's earlier decision, thoroughly narrates the extensive procedural history, medical evidence, and hearing testimony. ECF No. 20 at PageID #: 1009-21. It explains that, in the agency's most recent decision, after the ALJ concluded that Plaintiff was not entitled to benefits, the Appeals Council affirmed the denial because, based on Plaintiff's age, education, work experience, and residual functional capacity ("RFC"), Plaintiff can still participate in the national economy, and is therefore not disabled. *Id*. at PageID #: 1021 (citing Tr. 400-411).[1]

The Court presumes the parties' familiarity with this case's extensive background, including its first remand to the agency for further consideration,[2] and discusses only facts relevant to the narrow issue now before the Court: Whether the ALJ properly evaluated the medical evidence of record in assessing Plaintiff's eligibility for benefits under the "B" criteria of Listing 12.13 from January 1, 2005 through March 31, 2007 (Plaintiff's alleged onset date through her last date insured). The ALJ relied on the medical opinion of Dr. Davis to conclude that Plaintiff did not meet this listing. Because Dr. Davis' opinion did not include an analysis of Listing 12.13, was based on an incomplete record, and otherwise does not constitute substantial evidence, Plaintiff's Objection is well-taken.

## II. Standard of Review

When a magistrate judge submits a report and recommendation, the Court is required to conduct a *de novo* review of the issues in the portions of the report and recommendation to

---

[1] The Certified Transcript of the Administrative Record in this matter, which was compiled on September 19, 2019, appears at ECF No. 15.

[2] This is the second time Plaintiff has appealed her denial of benefits to this Court. *See Brewer v. Commissioner of Social Security*, 1:16CV137(PAG), ECF No. 21 (adopting, absent objection, ECF No. 19) (filed Jan. 3, 2017).

(5:19CV1854)

which an appropriate objection has been made. 28 U.S.C. § 636(b). Objections must be specific, not general, to focus the Court's attention on contentious issues. *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

The Court's *de novo* review of the ALJ's decision invited by Plaintiff's Objection to the Report and Recommendation is "limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). Substantial evidence is more than a mere scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Besaw v. Sec. of Health and Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) *(per curiam)*.

If substantial evidence supports the Commissioner's decision, a reviewing court must affirm the decision even if it would decide the matter differently. *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983) *(per curiam))*. Moreover, the decision must be affirmed even if substantial evidence would also support the opposite conclusion. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) *(en banc)*. This standard "allows considerable latitude to administrative decision makers. . . . An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." *Id.* (quoting *Baker v. Heckler*, 730 F.2d1147, 1150 (8th Cir. 1984)). In determining, however, whether substantial evidence supports the ALJ's findings in the instant matter, the Court must examine the record as a whole

3

(5:19CV1854)

and consider that which fairly detracts from its weight. *Wyatt v. Sec'y of Health and Human Servs*., 974 F.2d 680, 683 (6th Cir. 1992).

### III. Listing 12.13

Listing 12.13 requires:

A. Medical documentation of a persistent alteration in eating or eating-related behavior that results in a change in consumption or absorption of food and that significantly impairs physical or psychological health.

AND

B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):

    1. Understand, remember, or apply information (see 12.00E1).
    2. Interact with others (see 12.00E2).
    3. Concentrate, persist, or maintain pace (see 12.00E3).
    4. Adapt or manage oneself (see 12.00E4).

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.13.[3]

There is no dispute that Plaintiff meets the "A" criteria – her eating disorder was formally diagnosed in 2006. Tr. 236. Plaintiff is 5 feet, 6 inches tall, has long exhibited concerning behavior regarding her relationship with food and her weight, and, at all relevant times, weighed less – sometimes substantially less – than 120 pounds. Tr. 434; Tr. 48 (86 pounds in 2005); Tr. 218 (110 pounds in 2005); Tr. 222 (102 pounds in 2006). The CDC considers 115-154 pounds to be a healthy weight for an individual of Plaintiff's height.[4] The ALJ included anorexia nervosa as a severe impairment, in addition to "major depressive disorder, bipolar disorder,

---

[3] Plaintiff does not challenge the ALJ's determination that she did not meet the alternative "C" criteria. Tr. 404 ("I have also considered whether the "paragraph C" criteria were satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria.")

[4] https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html.

anxiety disorder, posttraumatic stress disorder, borderline personality disorder, and obsessive compulsive traits." Tr. 402.

The question is whether the ALJ erred in concluding that Plaintiff's impairments were not severe enough to meet the "B" criteria of this listing. To meet that criteria, an individual must have at least two marked limitations or one extreme limitation. As the ALJ accurately stated: "A marked limitation means functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited. An extreme limitation is the inability to function independently, appropriately or effectively, and on a sustained basis." Tr. 403; *see* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 Listing 12.00(F)(2)(d)-(e).

### IV. Analysis

This is the second time Plaintiff has appealed her denial of benefits to the Court. The first time, a magistrate judge explained:

> Here, the reviewing medical sources indicated that there was insufficient evidence to fully assess plaintiff's claims. (Tr. 76, 78) The ALJ recognized that the treating sources had not stated whether their opinions related to the relevant period but he did not seek any clarification from them. (Tr. 29) Furthermore, the ALJ did not thoroughly question plaintiff regarding the symptoms of her conditions and when she first began to experience them. (Tr. 55) Thus, his decision related to whether plaintiff was disabled during the relevant time period was not supported by substantial evidence. Because the ALJ's decision was based on an incomplete record and was not supported by substantial evidence, the undersigned recommends that it be vacated and remanded.

*Brewer*, 1:16CV137(PAG), ECF No. 19 at PageID #: 537.

With regard to the "B" criteria of Listing 12, that same magistrate judge explained that the ALJ's determination that Plaintiff had only moderate, not marked or extreme, difficulties, could not be affirmed: "[N]either the ALJ, nor this court, possesses the requisite medical expertise to determine whether plaintiff's impairments equal one of the Commissioner's listing. For this reason, the undersigned recommends that the case be remanded so the ALJ can properly

(5:19CV1854)

make an equivalency determination after consulting with a Commissioner-appointed medical expert or experts." Id. at PageID #: 542.

Against this backdrop, the Court analyzes the ALJ's most recent opinion. The ALJ concluded that Plaintiff had only mild limitations in understanding, remembering, or applying information as well as in adapting or managing herself.[5] The ALJ concluded that Plaintiff had moderate limitations in interacting with others, [6] and with regard to concentrating, persisting or maintaining pace. Tr. 404. The ALJ concluded: "Because the claimant's mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria were not satisfied." Id..

Following remand and prior to issuing the most recent decision, the ALJ held a second hearing at which Plaintiff, her husband, and Dr. Robert Bookchin, the medical expert appointed by the Commissioner of Social Security, testified. Tr. 421-90. Dr. Bookchin is an internist, not a psychologist, and opined that Plaintiff met Listing 12.07, somatic disorder, and 12.13, eating disorder with persistence. Tr. 477-78. Dr. Bookchin's opinion was based on his 58 years of medical experience in which he has been required to "judge [a] fair amount of psychiatric

---

[5] As discussed in more detail below, the Court has concerns regarding whether the finding of a mild limitation is supported by substantial evidence, particularly given the ALJ's failure to discuss Plaintiff's suicide attempt during relevant time frame. The ALJ based this finding on a conclusion that "the claimant performed several household chores. Additionally, the claimant participated in a church group and a prison ministry." Tr. 404. Even deferring to the ALJ's discounting of testimony that Plaintiff struggled with these chores, id., such findings do not support a conclusion that Plaintiff is capable of substantial gainful employment. Floyd v. Finch, 441 F.2d 73, 114 (6th Cir. 1971); see also Walston v. Gardner, 381 F.2d 580, 586 (6th Cir.1967) ("The fact that [a claimant] can still perform simple functions, such as driving, grocery shopping, dish washing, and floor sweeping does not necessarily indicate that this [claimant] possesses an ability to engage in substantial gainful activity. Such activity is intermittent and not continuous and is done in spite of pain suffered by [claimant].").

[6] As discussed below, this finding is inconsistent with other conclusions reached by the ALJ, which suggest marked, not moderate, limitations.

6

(5:19CV1854)

abnormalities." Tr. 478.

Specifically, as related to Plaintiff's eating disorder and Listing 12.13, Dr. Bookchin opined that Plaintiff had marked limitations in her ability to concentrate, to maintain pace, and to adapt and manage herself. Tr. 477-78. If any two of these restrictions were credited, Plaintiff would be entitled to an irrebuttable presumption of disability under Listing 12.13. Without citing to any conflicting record evidence, the ALJ concluded that Dr. Bookchin's testimony was not "logical at all[.]" Tr. 489. In response, the ALJ announced that he would send Plaintiff for a consultative examination with a psychologist, Dr. Sobieralski, and send some of the administrative record to a second psychologist, Dr. Davis, for evaluation. Tr. 489, 878-95. The record does not reflect that either of these psychologists was provided with any of Plaintiff's hearing testimony, nor Dr. Bookchin's assessment. Furthermore, neither of these professionals expressly evaluated Plaintiff's eating disorder during the relevant timeframe.

While Dr. Sobieralski opined that Plaintiff met the "B" criteria, and expressly evaluated Plaintiff's eating disorder, no evidence of record reflects that Dr. Sobieralski was advised that the relevant period for Plaintiff's symptoms was between 2005 and 2007. Her report reflects that she reviewed medical records from between 2015 and 2017, personally examined Plaintiff, and that her assessment was of Plaintiff's current condition. Tr. 888-95. Dr. Sobieralski provided a detailed narrative of her process and findings. *Id.* The ALJ conducted no follow-up with Dr. Sobieralski before disregarding her opinion based on its one-off nature and disconnect from the relevant timeframe. Tr. 409.

Dr. Davis, on the other hand, completed a check-box form, devoid of any independent analysis, or even a diagnosis of Plaintiff's conditions. Tr. 878-887. Such forms have been described by the Sixth Circuit as "weak evidence at best" and "patently deficient[,]" even when

7

(5:19CV1854)

authored by treating physicians. *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 475 (6th Cir. 2016).[7] While the ALJ did not discuss each of the 20 C.F.R. § 404.1527 factors in his evaluation of Dr. Davis' opinion, a review of those factors applicable to a non-treating source (supportability, consistency, specialization, and other factors, including whether the medical source is familiar with other information within the case record, or the agencies' regulations) further detracts from the claim that Dr. Davis' report constitutes substantial evidence in support of the ALJ's ultimate conclusions.[8]

Dr. Davis asserted his agreement with the ALJ's first decision. Tr. 882. The record does not confirm whether Dr. Davis had access to Plaintiff's testimony from either hearing, or Dr. Bookchin's testimony. Dr. Davis refers only to the 29 exhibits of medical records, and the ALJ's original opinion. Tr. 881-82. The Commissioner does not dispute Plaintiff's assertion that Dr. Davis was not given a copy of any hearing transcript, despite the ALJ referring this matter to Dr. Davis in response to Dr. Bookchin's testimony at the second hearing.

Ultimately, Dr. Davis did not refer to or expressly analyze the hearing testimony of either Plaintiff or Dr. Bookchin. As a result, before concluding that Plaintiff had only mild deficits in

---

[7] *See Keeton v. Comm'r of Soc. Sec.*, 583 Fed.Appx. 515, 525 (6th Cir.2014) (quoting SSR 96–2p, at *1, which states that "[a] case cannot be decided in reliance on a medical opinion without some reasonable support for the opinion"); *see also Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir.1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.").

[8] For example, Dr. Davis disregards a treating sources' opinion describing multiple limitations because the source is "not recognized as an authoritative source[,]" because he is a "Family [Doctor] or an internist" rather than a mental health specialist. Tr. 882. This reflects a misunderstanding of agency regulations. Specialization is but one of the 20 C.F.R. § 404.1527 factors. Specialization is also not an automatic reason to withhold controlling-weight status from the opinion of a treating physician. The regulations permit such disregard only when such an opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in" the record. *Id.*

(5:19CV1854)

managing herself, Tr. 883, there is no evidence that Dr. Davis was aware of Plaintiff's description of her 2005 suicide attempt:

> The kids were in their room, my oldest's room at the time, playing on the floor with their cars, and I walked in and kissed them, and then I walked in the room and got in a safe, and took the gun, and shot myself in the chest, and misfired. So I cocked it again. [My husband] heard it, and we fought for the gun.

Tr. 53. Given the relevant timing and seriousness of the attempt, one would expect both the ALJ (and a mental health expert) to pay close attention to such an event. Yet, in response to this testimony, the ALJ offered a single follow-up:

> Q. Is there a police report, or was that -- is that something you ever reported
> to any -- to your counselor, I guess, at the time, or --
> A. I didn't have a counselor.
> Q. Okay.

Tr. 53-54.

The ALJ did not ask Plaintiff's spouse about this incident, although he testified at the same hearing. The ALJ mentioned this testimony in his first decision, implicitly concluding that Plaintiff had lied: "While she reported a suicide attempt during the relevant period, there is no confirmation of such attempt." Tr. 26.

The ALJ offered no basis, let alone substantial evidence, for the implicit conclusion that Plaintiff had fabricated this serious incident. That was error. An ALJ is not permitted to disregard a claimant's testimony in the absence of conflicting evidence. *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). Furthermore, the only evidence in the record on this issue supports Plaintiff's explanation of events – the attempt is referenced in multiple medical records, ranging from months to years after the attempt. *See, e.g.* Tr. 235 (April 2006), Tr. 250 (February 2010). No medical professional has opined that the attempt was fabricated.

The prior magistrate judge stated: "Although an ALJ's credibility finding is entitled to great deference, the undersigned recommends that the plaintiff's credibility be reassessed after

9

(5:19CV1854)

the record has been further developed[.]" *Brewer*, 1:16CV137(PAG), ECF No. 19 at PageID #: 543. Despite this admonition, the ALJ omitted *any* reference to Plaintiff's 2005 suicide attempt in his most recent decision, and refers only to "suicidal thoughts" in 2005, and later medical records in which Plaintiff denied then-present suicidal thoughts.[9] On remand, the ALJ shall expressly and fully state his analysis concerning this incident, with citation to relevant medical opinions.

In summary, Dr. Davis performed no analysis, and offered no opinion, concerning Plaintiff's eating disorder or attempted suicide. Tr. 878-887. Dr. Davis evaluated Listings 12.04, 12.06, and 12.15, and concluded that Plaintiff did not meet a listing. Tr. 882.

The ALJ relied almost exclusively on Dr. Davis' opinion to conclude that Plaintiff did not meet any mental health listing. However, Dr. Davis did not analyze Listing 12.13 – he does not mention Plaintiff's eating disorder,[10] provides no functional assessment of Plaintiff, and makes no reference to her reports of her attempted suicide or any other self-harm. He notes only that some of the symptoms reflected in the notes of Plaintiff's mental health providers are self-reported. Tr. 882. There is no suggestion that Plaintiff's treating providers did not credit her symptoms, or did not rely on Plaintiff's reports of her moods and thoughts during therapeutic sessions to build a treatment plan. Indeed, the very nature of talk therapy is that a patient will self-report experiences that occur outside the presence of medical professionals. Individuals suffering from mental illness are not inherently experiencing their worst symptoms only during

---

[9] *See* Tr. 405 (describing Plaintiff's testimony from the first hearing as describing only "suicidal thoughts"); Tr. 406 (May 2006: "She remained oriented and she did not have suicidal or homicidal ideation." Throughout the Summer: "no violent ideation"); Tr. 408 (March 2007: "she was not homicidal or suicidal").

[10] Dr. Davis asserted that Plaintiff's "mood disorder and her anxiety disorder" were severe, but offers no explanation as to why her eating disorder is not, further suggesting that he did not consider Plaintiff's eating disorder. Tr. 882.

10

(5:19CV1854)

clinical appointments.

The Court concludes that the ALJ again failed in his duty to develop a record adequate to support the conclusions he reached. Because Dr. Davis' opinion does not analyze Listing 12.13, it is not evidence which conflicts with the opinions of Dr. Bookchin and Dr. Sobieralski, or on which the ALJ can rely to conclude Plaintiff does not meet that listing.

The ALJ was tasked with securing competent medical testimony concerning Plaintiff's impairments, including mental health limitations, on which he could base a new opinion. In response, the ALJ called only Dr. Bookchin to testify at the second hearing, rather than involving a mental health specialist. Dissatisfied with Dr. Bookchin's expert opinion (which was based on some psychological experience) the ALJ solicited two more inadequate opinions. The first did not perform any analysis within the relevant timeframe. The second based his opinion on an incomplete record, no examination of Plaintiff, and was presented in a "patently deficient" manner.

Despite prior judicial admonishment, the record does not reflect that the ALJ conducted rudimentary follow-up, after receiving the deficient opinions. Minimally, the ALJ should have asked Dr. Davis to complete the interrogatories in full and provide meaningful analysis of Plaintiff's impairments, including an analysis of Listing 12.13. Similarly, the ALJ should have contacted Dr. Sobieralski and clarified the need for an analysis focused on 2005-2007, the relevant timeframe. This alone is sufficient to require remand. *Mefford v. Gardner*, 383 F.2d 748, 758 (6th Cir. 1967).

The Court also notes that the ALJ's decision, in addition to being unsupported by substantial evidence as to its analysis of Listing 12.13, is internally inconsistent. For example, the ALJ concluded that Plaintiff had only moderate difficulties in social functioning, and yet

11

(5:19CV1854)

included the following mental-health related limitations in Plaintiff's RFC: "She could have occasional contact with the public and she could do tasks with occasional interaction with co-workers. The claimant could have superficial interaction with others, in that she could do no tasks involving arbitration, negotiation, confrontation, directing the work of others, persuading others, or being responsible for the safety or welfare of others." Tr. 405. These restrictions reflect marked limitations.[11] Similar inconsistencies are present in the ALJ's description of the weight he ascribed to various medical opinions. For example, the ALJ discounts Dr. Sobieralski as having provided a one-time assessment which included a review of information from outside of the 2005-2007 timeframe, Tr. 409, yet expressed no concerns that the same could be said of Dr. Davis' opinion. The ALJ shall take care, on remand, to produce a reasoned and legally supportable decision.[12]

---

[11] *Compare id. with Miller v. Colvin*, No. 3:15-CV-294-DW, 2016 WL 154127, at *8-9 (W.D. Ky. Jan. 12, 2016) (finding an RFC that limited the plaintiff to "no interaction with the general public and only occasional, but superficial, interaction with co-workers and supervisors combined with no close tandem work" properly accounted for the plaintiff's "marked" limitation in social functioning); *Libertore v. Comm'r of Soc. Sec.*, No. 5:11 CV 1245, 2012 WL 3815622, at *11 (N.D. Ohio July 26, 2012) ("To the contrary, a restriction to jobs without arbitration, confrontation, or negotiation, and further involving only superficial interpersonal interaction with the public or co-workers, is a significant enough limitation to sufficiently accommodate for Claimant's marked social functioning difficulties."), *adopted*, 2012 WL 3815626 (Sept. 4, 2012).

[12] The ALJ shall also take care not to over-rely on notations in medical records suggesting some improvement in aspects of Plaintiff's condition. *See, e.g.*, Tr. 406, 408. Such analysis can be "grounded in a myopic reading of the record combined with a flawed view of mental illness." *Boulis–Gasche v. Comm'r of Soc. Sec.*, 451 Fed.App'x. 488, 494 (6th Cir.2011) (vacating an ALJ's decision in which the ALJ relied on indications of a claimant's relative improvement in determining that no mental impairment existed); *see also Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 323 (6th Cir. 2015). "[I]mprovement in the level of mental functioning is a relative concept and is dependent on the base level from where the improvement is measured. The Sixth Circuit has held that better does not mean no longer impaired." *Therrien v. Comm'r of Soc. Sec.*, No. 18-12966, 2019 WL 3202194, at *6 (E.D. Mich. June 28, 2019) (cleaned up) (collecting authorities). That symptoms associated with mental impairments may wax and wane more than many physical ailments requires nuance in assessing improvement.

(5:19CV1854)

## V.  Conclusion

For the reasons stated herein, Plaintiff's Objection to the Report and Recommendation is well-taken.  The Court remands this matter to the agency for further proceedings consistent with this opinion.

IT IS SO ORDERED.

| | |
|---|---|
| March 31, 2021 | */s/ Benita Y. Pearson* |
| Date | Benita Y. Pearson<br>United States District Judge |